IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

THOMAS N. THOMPSON,

      Plaintiff,

vs.                         Case No. 09-1160-JTM

MICHAEL J. ASTRUE, Commissioner of
Social Security,

      Defendant.

MEMORANDUM AND ORDER

Plaintiff Thomas N. Thompson (Thompson) has previously received Social Security benefits as a disabled adult child. However, the benefits ended after the Secretary determined that Thompson was no longer disabled due to medical improvements. The matter is before the court on Thompson's appeal.

Plaintiff-claimant Thompson was born in 1984, and has previously been found to be disabled due to bi-polar disorder and attention deficit hyperactivity disorder (ADHD), and that his impairment met the standard set forth in 20 C.F.R. Pt. 404, Subpt. P. App. 1, Listing of Impairments, Listing 12.04, *Affective Disorders.* Thompson has a high school and some college education, and has completed an eighteen month vocational course in computer technology. He has worked as an automation analyst, order clerk, delivery person, and kitchen helper.

The detailed facts of the case, which are incorporated herein, are set forth independently in the ALJ's opinion (Tr. 17-26), and the briefs of Thompson (Dkt. 14, at 3-16) and the Commissioner (Dkt. 23, at 2-3).

Thompson was found disabled effective March 1, 2002 and began receiving disabled adult child benefits on the record of his father, C.W. Thompson. As noted earlier, it was determined on December 17, 2005, that – as of December 1, 2005 – Thompson was no longer disabled. After this decision was upheld upon reconsideration by a state agency Disability Hearing Officer, Thompson filed a request for a hearing before an Administrative Law Judge. The ALJ ruled that Thompson was no longer disabled as of December 1, 2005.

Thompson now claims the ALJ erred in deciding that his disability has ended. Specifically, Thompson contends that (1) the ALJ improperly analyzed the credibility of the claimant's mother, (2) the ALJ erred in determining that Thompson could perform significant numbers of jobs in the national economy, (3) his activities of daily living do not establish an ability to perform substantially gainful activity, and (4) his condition meets listing 12.04 - *Affective Disorders*.

Those entitled to disability benefits must have their continuing entitlements reviewed periodically. 20 C.F.R. 404.1594. If the claimant has experienced medical improvement affecting his ability to work, the claimant's eligibility to receive benefits may end. *Shepard v. Apfel*, 184 F.3d 1196 (10th Cir. 1999). Specifically, if substantial evidence shows a claimant has experienced medical improvement in his impairment(s), that those improvements relate to the ability to work, and that claimant is now able to perform substantially gainful activity, the claimant's entitlement to disability benefits will end. 42 U.S.C. 423(f). The Commissioner bears the burden of producing this evidence. *Knapp v. Barnhart*, 68 Fed.Appx 951, 952 (10th Cir. 2003).

The Commissioner determines whether a claimant's disability continues pursuant to an eight step sequential evaluation process pursuant to 20 CFR 404.1594. The Commissioner must determine (1) whether the claimant is engaging in substantially gainful activity, (2) whether the claimant has one or more impairments that meet the criteria of an impairment 20 CFR 404, subpart P, appendix 1, (3) whether medical improvement of claimant's impairments has occurred, (4) whether the medical improvement is related to the ability to work, (5) whether an exception to medical improvement applies, (6) whether claimant's current impairments are severe, (7) whether the claimant can perform past relevant work by assessing the claimant's current residual functioning capacity, and (8) whether there is other work that the claimant is able to perform. 20 CFR 404.1594(f).

The court's review of the Commissioner's decision is governed by 42 U.S.C. 405(g) of the Social Security Act. Under the statute, the Commissioner's decision will be upheld so long as it applies the "correct legal standard," and is supported by "substantial evidence" of the record as a whole. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994).

Substantial evidence means more than a scintilla, but less than a preponderance. *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). It is satisfied by evidence that a reasonable mind might accept to support the conclusion. The question of whether substantial evidence supports the Commissioner's decision is not a mere quantitative exercise; evidence is not substantial if it is overwhelmed by other evidence, or in reality is a mere conclusion. *Id.* The court must scrutinize the whole record to determine whether the Commissioner's conclusions are rational. *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992).

This deferential review is limited to factual determinations; it does not apply to the Commissioner's conclusions of law. Applying an incorrect legal standard, or providing the court with an insufficient basis to determine that correct legal principles were applied, are grounds for reversal. *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987).

Thompson first argues that the ALJ failed to properly assess the credibility of his mother, Kathleen Thompson, by accepting some of her statements as credible while rejecting others as not credible. The ALJ is "optimally positioned to observe and assess witness credibility." *Adams v. Chater*, 93 F.3d 712, 715 (10th Cir. 1996) (quoting *Casias v. Secretary of Health and Human Services*, 933 F.2d 799, 801 (10th Cir. 1991)). Therefore, the ALJ's determinations of credibility will not be disturbed unless there is a "conspicuous absence of credible evidence to support it." *Patterson v. Apfel*, 62 F.Supp.2d 1212, 1217 (D.Kan 1999) (citing *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992)). Thompson would have the ALJ accept either all or none of Ms. Thompson's statements as credible. However, "[b]ased on a consideration of all the evidence in a case record, the adjudicator may find all, only some, or none of an individual's allegations to be credible." SSR 96-7p.

Here, the ALJ gave significant weight to Kathleen Thompson's statements regarding Thompson's daily activities and interactions with others because these statements were consistent with therapist reports and statements made by Thompson himself. The ALJ conversely did not give substantial weight to Ms. Thompson's statements regarding her son's limitations because they were inconsistent with both previous statements she herself had made and with statements made by Thompson's employer at Pizza Hut. (Tr. 23-24). The ALJ's findings regarding Ms. Thompson's credibility were supported by substantial evidence in the record and thus will not be overturned.

4

Thompson next argues that the ALJ erred in holding he was able to perform significant numbers of jobs in the national economy. Thompson claims the ALJ ignored his testimony, as well as that of his mother and his Pizza Hut employer in deciding that Thompson exhibits a moderate, rather than extreme, limitation in maintaining concentration, persistence and pace. However, as noted above, the ALJ did not find Ms. Thompson's testimony regarding Thompson's limitations to be credible.

Furthermore, the ALJ cited substantial evidence in the record establishing that many of Thompson's previous jobs ended for reasons other than his mental disorder and that some of his statements regarding his work-related limitations were not fully credible. Finally, his Pizza Hut employer specifically said that "speed was a weakness, but not a hindrance," and, more significantly, that he believed Thompson was capable of working full time and that he would rehire Thompson. (Tr. 221). According to his supervisor, Thompson had no limitations or impairments in doing his job. The ALJ's determination that Thompson exhibited only moderate limitations in concentration, persistence, and pace is supported by substantial evidence in the record.

In the same argument, Thompson claims the ALJ erred by neglecting to ask the vocational expert whether extreme limitations in concentration, persistence, or pace would preclude a hypothetical claimant with Thompson's RFC from employment in jobs existing in the national economy. However, the ALJ determined that Thompson did not exhibit extreme limitations. Hypothetical questions posed to experts "need only reflect impairments and limitations that are borne out by the evidentiary record." *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996). As discussed above, the record does support a finding that Thompson suffers extreme limitations in concentration, persistence, or pace. Therefore, the ALJ did not err in neglecting to ask the

5

vocational expert hypothetical questions regarding such limitations. Further, a hypothetical question, based on the mild or moderate limitations suggested by Dr. Holloway, was advanced at a follow-up hearing. (Tr. 279-81). The court finds no error.

Third, Thompson argues that the ALJ improperly considered his daily activities as supportive of a finding of non-disability. In assessing a claimant's credibility, his or her daily activities are one of several factors that should be considered. *Jesse v. Barnhart*, 323 F.Supp.2d 1100, 1106 (D.Kan 2004) (citing *Barnett v. Apfel*, 231 F.3d 687, 690) (10th Cir. 2000). Here, the ALJ considered the activities of daily living form completed by Kathleen Thompson, Comcare's records indicating Thompson had an appropriate and neat appearance, and Thompson's own statement denying he had any problems caring for his personal needs in determining that Thompson's restrictions in the area of activities of daily living were mild. (Tr. 22-23).

Thompson correctly asserts that sporadic performance of household tasks does not indicate an ability to perform substantially gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993) (quoting *Frey v. Bowen*, 816 F.2d 508, 516-17 (10th Cir. 1987)). However, Thompson has not pointed to any evidence in the record that would indicate that performance of his daily activities was sporadic. For example, Kathleen Thompson indicated that her son prepares at least two meals *daily*. The ALJ properly considered Thompson's daily activities in conjunction with other factors in denying Thompson's disability claim, and therefore did not err.

Thompson's final argument is that the ALJ erred in failing to find that his condition meets Listing 12.04. *See* 20 C.F.R. Pt. 404, Subpt. P. App. 1, Listing of Impairments, Listing 12.04, *Affective Disorders.* However, the cited evidence (from a 2008 intake report and a 2009 medical source statement) all arose well after the December 1, 2005 date on which the ALJ determined that

the disability had ended. Further, this intake report shows only moderate limitation, reports that Thompson "adamantly refused" to take medication for his condition, and that it "appears [Thompson has] more interest in trying to stay on disability than actual treatment." (Tr. 258, 288). The medical source statement is simply a check-marked form, with no supporting medical evidence, and was obtained after the ALJ's decision. The Appeals Council did not err in finding that the report, taken in conjunction with all of the other evidence in the case, did not establish plaintiff met the Listing 12.04. (Tr. 8).

The ALJ here noted medical evidence showing Thompson's medical disorder was not severe. (Tr. 25). Thompson's subjective claims of mental disorder were contradicted by his own level of activity, and not otherwise supported by objective medical evidence. (*Id.*) Incidences of decreased GAF scores were correlated to periods in which Thompson refused to take medication, but otherwise showed steady improvement. (Tr. 21). The ALJ further found that Thompson had no "repeated episodes of extended decompensation, inability to adjust to environmental changes, or the need for a highly supportive living arrangement." (Tr. 20).

IT IS ACCORDINGLY ORDERED this 29th day of July, 2010 that the present appeal is hereby DENIED and the decision of the Commissioner is AFFIRMED.

s/ J. Thomas Marten<br>
J. THOMAS MARTEN, JUDGE